OPINION OF THE COURT
Barbara Jaffe, J.
By notice of motion dated March 12, 2012, plaintiffs move pursuant to CPLR 3212 for an order granting summary judgment against defendants Allstate Life Insurance Company of New York (Allstate) and Pruco Life Insurance Company of New Jersey (Pruco) in the amount of the life insurance policies issued by them to plaintiff Valentina Minakova. Defendants oppose.
By notice of motion dated March 19, 2012, Pruco moves pursuant to CPLR 3212 for an order dismissing the complaint against it and declaring the subject insurance policy void ab initio. Plaintiffs oppose. By notice of motion dated March 19, 2012, Allstate moves pursuant to CPLR 3212 for an order dismissing the complaint against it and declaring the subject insurance policy void ab initio. Plaintiffs oppose. The motions are consolidated for disposition.
I. Pertinent Facts
The facts in this matter are set forth in the decision and order dated March 11, 2009 and rendered by the Justice previously assigned to this matter (Ganelina v Perchikov, 22 Misc 3d 1137[A], 2009 NY Slip Op 50475[U] [2009]), and are summarized as follows: plaintiff Ganelina is the personal representative and administratrix of the estate of Tatiana Light, also known as Tatiana Korkhova, the deceased. Plaintiff Minakova is the deceased’s sister. It is alleged that defendants Perchikov, also known as Eyal Shahar, and Shkolnik conspired to persuade the deceased to obtain life insurance policies from Allstate and Pruco and name them as the primary beneficiaries, and then murdered her for the insurance proceeds. On the Pruco policy, Perchikov is identified falsely as the deceased’s brother and primary beneficiary; Shkolnik is identified falsely as the deceased’s sister and primary beneficiary on the Allstate policy. Perchikov allegedly paid the premiums on each policy. Plaintiffs are named as secondary or contingent beneficiaries on the policies.
The Pruco policy has an issue date of October 16, 2001; the Allstate policy has a start date of November 10, 2001. Both policies contain incontestability clauses which provide that the in *955 surance company cannot contest the policy once it has been in force while the insured was alive for two years from the start or issue date.
On August 7, 2004, Perchikov allegedly murdered the deceased by administering to her a lethal dose of norepinephrine. In June 2006, Shkolnik commenced an action against Allstate, seeking to recover the proceeds of the policy. The action was removed to federal court (the federal action), and Allstate counterclaimed against Shkolnik for a judgment declaring that it was relieved of any obligation to pay the proceeds on the ground that its policy was void ab initio, having been obtained in furtherance of a criminal enterprise. Allstate also brought a third-party claim against Minakova, seeking a declaration that it had no obligation to pay the proceeds to her on the same ground. Minakova then counterclaimed against Allstate and cross-claimed against Shkolnik and Perchikov, seeking to recover the proceeds on the ground that they were disqualified as beneficiaries by having participated in the murder of the deceased.
In December 2006, the federal court dismissed Shkolnik’s complaint with prejudice as abandoned, granted a default judgment against Shkolnik on Allstate’s counterclaim, and declared that Allstate was not obligated to remit the proceeds to Shkolnik. On January 16, 2007, the federal court granted a default judgment against Shkolnik on Minakova’s cross claim and declared that Shkolnik was disqualified from receiving the proceeds of the Allstate policy. On August 7, 2009, the federal court also granted Minakova’s cross claim against Perchikov to the extent of excluding him from receiving the proceeds of the Pruco policy.
In his March 2009 decision, the Justice previously assigned granted plaintiffs default judgments for the wrongful death of the deceased against Perchikov and Shkolnik and ordered an inquest on damages.
II. Analysis
The issue on these motions is whether plaintiffs are entitled to be paid the proceeds of the insurance policies or whether the policies should be declared void ab initio on the grounds that the policies were procured based on a scheme to murder the deceased and/or that the deceased made false representations in applying for the policies.
*956 A. Plaintiffs’ Motion
1. Are the Policies Incontestable?
Pursuant to Insurance Law § 3203 (a) (3), all life insurance policies shall provide for the incontestability of the policy after being in force during the life of the insured for two years from its issue date. It is undisputed here that each policy contains such a provision, and that the deceased died more than two years after the policies’ issue or start dates.
An incontestability clause renders void any defense that the life insurance policy was invalid at its inception. (Berkshire Life Ins. Co. v Weinig, 290 NY 6 [1943].) A defense based on fraud, such as fraudulent misrepresentations, fraud in the procurement, and fraud in the making of the contract, is thus barred after the expiration of the period of contestability. (69 NY Jur 2d, Insurance § 1470 [2013]; Monarch Life Ins. Co. v Brown, 125 AD2d 75 [1st Dept 1987] [incontestability clause barred defense of false and fraudulent representations by insured in application for policy].)
Pruco and Allstate’s fraud defenses, based on Light’s misrepresentations as to the salary she was earning and her relationship to Perchikov and Shkolnik, are thus barred as defendants could have investigated and ascertained the veracity of these representations during the two-year contestability period. (See Ilyaich v Bankers Life Ins. Co. of N.Y., 47 AD3d 614 [2d Dept 2008] [defendants barred from contesting policy based on insured’s allegedly fraudulent misrepresentations in application as to his assets and purpose of insurance].)
Pruco and Allstate are also barred from contesting the validity of the policy based on Perchikov’s and Shkolnik’s alleged lack of an insurable interest in the deceased’s life. (New England Mut. Life Ins. Co. v Caruso, 73 NY2d 74 [1989] [after contestability period lapses, insurer may not argue that policy void ah initio based on beneficiary’s lack of insurable interest]; Halberstam v United States Life Ins. Co. in the City of N.Y., 36 Misc 3d 497 [Sup Ct, Kings County 2012] [same].)
In fact, the Court of Appeals has recently held that New York insurance law “permits a person to procure an insurance policy on his or her own fife and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose.” (Kramer v Phoenix Life Ins. Co., 15 NY3d 539, 545 [2010].) The Court declined to expand the scope of the question certified to it by the Second Circuit and thus did not consider whether the District Court had erred in determining that the insurers were barred from attempting *957 to void the policies on the ground of lack of an insurable interest after the passage of the two-year contestability period. (Id. at 547, 548 nn 3, 4.)
While defendants cite Settlement Funding, LLC v AXA Equit. Life Ins. Co. (2011 WL 1097635, 2011 US Dist LEXIS 28798 [SD NY, Mar. 21, 2011, No. 09 CV 8685(HB)]), in support of their position that they are not barred from asserting the insurable interest defense, that decision has gained no traction with other federal district courts (see Principal Life Ins. Co. v Erno Altman Ins. Trust, 2011 WL 7498936, 2011 US Dist LEXIS 154060 [ED NY, Sept. 20, 2011, No. 10 CV 1936 (DLI)] [incontestability clause barred challenges based on lack of insurable interest and fraud]; Berkshire Settlements, Inc. v Ashkenazi, 2011 WL 5974633, *3-4, 2011 US Dist LEXIS 136663, *10-11 [ED NY, Nov. 29, 2011, No. 09 CV 0006 (FB) (JO)] [same result even where it appeared that insured did not validly consent to have her life insured by another]).
Thus, the only issue remaining is whether Perchikov’s and Shkolnik’s alleged scheme to murder the deceased renders the policies void ah initio notwithstanding the incontestability provisions. In Columbian Natl. Life Ins. Co. v Hirsch, the Court of Appeals held that the incontestability clause in the defendant’s insurance policies barred the insurer from seeking rescission of the policies even though it was alleged that the insured had entered into a conspiracy with others to obtain the policies, the persons had no insurable interest in his life and paid the premiums, it was understood that the policies would be paid to them, and that in furtherance of the conspiracy, the insured made false statements in the insurance applications. (267 NY 605 [1935].)
Similarly, in Berkshire Settlements, Inc., the insured testified that she had not signed an insurance policy on her life and that her signature had been forged, and the evidence also showed that the entity to which the policy had been assigned was a sham corporation. Nevertheless, the court found that the incontestability clause barred the insurer from contesting the validity of the policy. (2011 WL 5974633, 2011 US Dist LEXIS 136663.) The opinions cited by defendants on this issue are not on point absent any discussions as to the applicability of incontestability periods.
Even where a person has taken out a life insurance policy on someone else’s life with the intent to murder or has murdered the insured, the policy will not be declared void as *958 long as someone other than the murderer is named as a policy beneficiary. In Boatwright v New York Life Ins. Co., the Court observed that according to Restatement (First) of Restitution § 189 (1),
“the beneficiary of a life insurance policy who has murdered the insured holds his interest under the policy upon a constructive trust for the estate of the insured except that the insurer is relieved of liability to pay the proceeds of the policy if . . . (3) no one other than the murderer or one claiming through him has any interest in the policy.” (64 AD2d 262, 264-265 [4th Dept 1978], lv denied 46 NY2d 708 [1979].)
There, the plaintiff was the uncle of the deceased and the administrator of her estate, and the deceased’s husband had been convicted of murdering her and was also the only beneficiary listed in the insurance policies. The Court held that the insurers were not required to pay the policies to the plaintiff, not because the policies were void, but because the murderer was the sole named beneficiary under both policies. (See also Nager v United of Omaha Life Ins. Co., 17 Misc 3d 1114[A], 2007 NY Slip Op 52004[U] [Sup Ct, Suffolk County 2007] [finding that plaintiff was not disqualified from receiving policy proceeds until it was established at trial that she intentionally took life of insured]; Moseley v Hms Monaco Et CIE, Ltd., 1989 WL 1716416 [Sup Ct, NY County 1989] [while murderer forfeited right to deceased’s insurance policy naming him as beneficiary, proceeds could be paid to deceased’s sibling under Estates, Powers and Trusts Law]; Doe v American Gen. Life Ins. Co. of N.Y., 139 Misc 2d 80 [Sup Ct, Bronx County 1988] [denying insurer’s motion to dismiss plaintiffs claim for proceeds of insurance policies taken out on her sons, even though plaintiff was suspect in sons’ murders]; see also 71 NY Jur 2d, Insurance § 2272 [2013] [“(although a beneficiary forfeits his or her right to recover under the insurance contract if he or she feloniously kills the insured, as a general rule the insurer is not relieved of liability on the policy in such a case but must pay the proceeds of the contract to the insured’s estate”].)
Moreover, defendants have not established that the deceased participated in or had knowledge of the scheme to murder her or that she did not willingly and knowingly apply for the policies. In Goldstein v New York Life Ins. Co. (225 App Div 642 [1st Dept 1929]), the insured allegedly participated in a scheme whereby he obtained life insurance for himself and named an *959 other person as a beneficiary, and he and that person agreed to fake his death so that the other person could collect the insurance proceeds and share them with him. However, the other person then killed the insured in order to keep the proceeds for himself and thereafter attempted to collect on the policy. The Court found that the policies were void as they “were not issued upon the life of the insured, but were issued as a part of a scheme to defraud the insurance company.” (Id. at 646.) Goldstein is thus inapposite absent any undisputed evidence of the deceased’s intent to defraud defendants. (See also Estate of Grieco v Bankers Am. Life Assur. Co., 251 AD2d 446 [2d Dept 1998] [insurer had to prove that decedent had no independent motivation to insure her own life and sole motivation for obtaining insurance was provided by beneficiary who planned insured’s murder for insurance proceeds]; John Hancock Life Ins. Co. v Perchikov, 553 F Supp 2d 229 [ED NY 2008] [same].)
Accordingly, defendants have failed to cite any authority for the proposition that a life insurance policy that was procured as part of a scheme by the beneficiary to murder the insured and collect the proceeds, absent any participation in the scheme by the insured, is thereby void ab initio and/or challenges to it are not barred by an incontestability provision.
2. Have Plaintiffs Established Right to Judgment on the Policies?
A beneficiary of a life insurance policy forfeits his or her right to the proceeds if he or she murders or feloniously causes the death of the insured. (71 NY Jur 2d, Insurance § 2272.) However, it must have been determined that the beneficiary killed or was involved with the murder of the insured before it can be found that the beneficiary forfeited his or her rights. (Id.; see Matter of Barrett, 224 AD2d 415 [2d Dept 1996] [issue of whether beneficiary acted in self-defense in killing insured had to be resolved at trial before it could be determined if she was entitled to insurance proceeds]; Doe, 139 Misc 2d at 82 [absent conviction for intentional homicide, facts of insured’s death must be established at trial]; Matter of Loud, 70 Misc 2d 1026 [Sur Ct, Kings County 1972] [forfeiture must be proved and thus when killer has been convicted of intentional homicide, no hearing necessary, but otherwise hearing must be held to prove that beneficiary intentionally and feloniously took insured’s life]; Lake v New York Life Ins. Co., 194 NYS2d 1006 [Sup Ct, NY County 1959] [secondary beneficiary not entitled to life insurance proceeds where primary beneficiary was charged only with criminal negligence in death of insured].)
*960 Here, there has been no criminal trial or conviction involving Perchikov or Shkolnik and the deceased. Plaintiffs, however, in order to establish their entitlement to the proceeds, rely on the default judgments they obtained against Perchikov and Shkolnik both here and in the federal action, where they were excluded and/or disqualified from receiving the insurance proceeds.
In Doyle v Sullivan, it was held that the contingent beneficiaries were entitled to recover death benefits where the primary beneficiary was still alive but was otherwise disqualified from receiving the benefits. There, however, the annuity contract did not require as an explicit condition that the primary beneficiary be deceased before the contingent beneficiary could recover, which the Court held was dispositive, and it further provided that the contingent beneficiary could recover if there was no primary beneficiary living or in effect. (176 AD2d 55 [4th Dept 1991] [emphasis added].)
Here, as the Allstate policy provides that a contingent beneficiary cannot recover if there is a living payee in a higher class of beneficiary, and the Pruco policy contains similar language, Doyle is not on point.
Therefore, to the extent that plaintiffs may recover as contingent or secondary beneficiaries only if Perchikov and Shkolnik are deemed to have forfeited their rights to the proceeds by having participated in the deceased’s murder, plaintiffs must establish their participation. (See Lake, 194 NYS2d at 1007 [secondary beneficiary has no right to proceeds while primary beneficiary living, and no forfeiture could be found based solely on criminal negligence charge against primary beneficiary].)
If an issue has been determined on default, it has not been “actually litigated” such that the determination issued on default ought be given binding or preclusive effect. (See Kaufman v Eli Lilly & Co., 65 NY2d 449 [1985] [issue has not been actually litigated if there has been default].) In State Farm Ins. Co. v Frias, plaintiff insurance company moved for a default judgment against 7 of 10 defendants, which was granted to the extent of declaring that it was not required to provide coverage to the defaulting defendants on the ground that the accident at issue had resulted from an intentional act. It then moved for summary judgment against the non-defaulting defendants on the same ground and argued that it was not required to provide coverage to those defendants. The Court denied the motion, finding that the default judgment bound only the defaulting defendants and could not be given preclusive effect to deprive *961 the non-defaulting defendants of their right to litigate the issues pertaining to coverage. (66 AD3d 997 [2d Dept 2009]; see also American Motorists Ins. Co. v North Country Motors, 57 AD2d 158, 160 [3d Dept 1977] [“person concerned with the issue of insurance coverage cannot be deprived of an opportunity to be heard on that point by the default of another, and the doctrine of collateral estoppel or res judicata cannot be used to effectuate such an end”].)
Here, the default judgments obtained by plaintiffs against Perchikov and Shkolnik do not represent an adjudication of the issue of whether they murdered the deceased, nor do they bind defendants from litigating this issue. (See e.g. Hough v USAA Cas. Ins. Co., 93 AD3d 405 [1st Dept 2012] [as underlying action resulted in default judgment and issue of whether insured’s acts were intentional or negligent was not litigated, insurer not estopped from asserting that insured acted intentionally]; Rourke v Travelers Ins. Co., 254 AD2d 730 [4th Dept 1998] [defendant insurer not estopped from asserting that its insured acted intentionally despite finding in underlying action that insured was negligent as judgment was entered on default and finding of negligence not actually litigated].)
Therefore, the issue of whether Perchikov and Shkolnik murdered the deceased and thus forfeited their rights to the insurance proceeds must be determined at trial.
B. Defendants’ Motions
As defendants’ motions for summary judgment are based on the contentions set forth in their opposition to plaintiffs motion, they are denied for the reasons stated above.
III. Conclusion
Accordingly, it is hereby ordered, that plaintiffs’ motion for summary judgment against defendants Allstate Life Insurance Company of New York and Pruco Life Insurance Company of New Jersey is denied; it is further ordered, that defendant Pruco Life Insurance Company of New Jersey’s motion for an order dismissing the complaint against it is denied; and it is further ordered, that defendant Allstate Life Insurance Company of New York’s motion for an order dismissing the complaint against it is denied.